UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ROBERT ARREDONDO, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:16-CV-238 |
| § | |
| THE UNIVERSITY OF TEXAS § | |
| MEDICAL BRANCH AT GALVESTON; § | |
| dba UTMB HEALTH; dba UTMB § | |
| CORRECTIONAL MANAGED CARE, *et* § | |
| *al*, § | |
| § | |
| Defendants. § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Partial Motion to Dismiss and Motion for More Definite Statement. Dkt. 13. Based on the pleadings; the motion, response, and reply; and the applicable law, the Defendants' motion is granted in part, and denied in part. The reasons for the ruling are explained below.

## **Background**

From 2007 to 2013, Robert Arredondo ("Arredondo") worked for the University of Texas Medical Branch at Galveston ("UTMB")[1] as a Mental Health Worker, providing services to inmates in the Texas prison system. Arredondo is a Hispanic male and—at the time of his termination from UTMB—was forty-five years of age. While employed, Arredondo received intermittent Family and Medical Leave Act ("FMLA") leave and various Americans with Disabilities Act ("ADA") accommodations due to his diabetes.

---

[1] d/b/a UTMB health a/d/b/a UTMB Correctional Managed Care.

During this period, Arredondo unsuccessfully applied for forty-six promotions. According to Arredondo, many of the successful candidates for promotion were less qualified and were either younger than Arredondo, female, and/or non-Hispanic.

Arredondo eventually filed a grievance with UTMB based on discrimination on the basis of race, sex, and age. His complaint was forwarded to UTMB's local Human Resources Administrator, Deborah S. Dansbe ("Dansbe"). Two days after the grievance was filed, according to Arredondo, Dansbe began working with Arredondo's supervisors, Donald Hlavinka ("Hlavinka"), Shana L. Khawaja ("Khawaja"), and Charlotte Kearney ("Kearney") to create reasons to discipline him. Specifically, Dansbe instructed Arredondo's supervisors to begin documenting complaints against him. Arredondo subsequently received his first below-average performance review. According to Arredondo, UTMB continued to generate false and misleading reports on his performance before ultimately terminating his employment.

Arredondo filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). Having exhausted his administrative remedies, he then filed the instant suit. Arredondo's Complaint asserts causes of action for violations of the following statutes: (1) 42 U.S.C. § 2000e ("Title VII"); (2) the ADA, 42 U.S.C. § 12101; (3) the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"); and (4) the FMLA, 29 U.S.C. § 2601. Arredondo asserted each statutory violation against UTMB as well as Dansby, Hlavinka, and Khawaja in their official capacities. Also named in his official capacity was David L. Callender ("Callender"), president of UTMB. UTMB filed this instant motion to dismiss for lack of subject matter jurisdiction and for

failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.[2] In the alternative, UTMB moves for a more definite statement pursuant to Rule 12(e).

## Standard of Review

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action if the court lacks subject matter jurisdiction to entertain it. FED. R. CIV. P. § 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quoting *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011)).

A Rule 12(b)(1) motion to dismiss is characterized as either a "facial" attack, that is, the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, that is, the facts in the complaint supporting subject matter jurisdiction are questioned. *Turner Indus. Group, LLC v. Int'l Union Operating Eng'rs*, 8 F. Supp.3d 875, 883 (S.D. Tex. 2014). An attack is "facial" if the defense "merely files a Rule 12(b)(1) motion …." *Peterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In

---

[2] UTMB asserts both Rules 12(b)(1) and 12(b)(6) as bases for its motion to dismiss. However, UTMB's arguments are jurisdictional. Accordingly, the Court analyzes its motion under Rule 12(b)(1).

such cases, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id*.

**B. Motion for More Definite Statement**

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. § 12(e). Such motions, however, are "generally disfavored." *Lehman Bros. Holding, Inc. v. Cornerstone Mortg. Co.*, No. 09–0672, 2009 WL 1504977, at *1 (S.D. Tex. May 29, 2009) (collecting authorities). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (citations omitted).

## Discussion

**A. Initial Matters**

Initially, the Court notes that Arredondo's Response compels the dismissal of several claims. Arredondo alludes in his Response to a desire to file a second amended complaint.[3] However, he did not file a motion to further amend his complaint. While the Court declines to consider the request here, it takes judicial notice of several of Arredondo's stipulations and clarifications regarding his anticipated second amended complaint.

---

[3] Arredondo filed his Response on December 22, 2016—more than two months before the deadline for amending pleadings. *See* Dkt. 20.

The Court therefore **DISMISSES** Arredondo's ADEA claims. *See* Dkt. 21, p. 4 ("Plaintiff's Second Amended Complaint removes the ADEA claims ….").

The Court further **DISMISSES** Arredondo's FMLA claims for relief apart from injunctive and/or declaratory relief pursuant to *Ex parte Young*. *See* 209 U.S. 123, 28 (1908); Dkt. 21, p. 4 ("Plaintiff's Second Amended Complaint … limits the FLMA claims to *Ex parte Young* claims.").

The Court further **DISMISSES** Arredondo's claims for damages—including front pay—against the individual Defendants. Arredondo clarifies that he does not seek monetary damages—including front pay—from the individual Defendants regarding any claim.

Finally, Arredondo clarifies that he asserts no cause of action involving disability discrimination pursuant to Title VII. Pursuant to Arredondo's concession—and because there is no Title VII cause of action for disability discrimination—Arredondo's ADA claim for discrimination on the basis of his disability is also **DISMISSED**.

Accordingly, the following live causes of action remain:

- Title VII, 42 U.S.C. § 2000e, alleging discrimination on the basis of sex and race against UTMB and the individual Defendants in their official capacities as well as retaliation for opposing such discrimination.

- ADA, 42 U.S.C. § 12101, alleging discrimination on the basis of Arredondo's disability against UTMB and the individual Defendants in their official capacities (Title I) as well as retaliation for opposing such discrimination (Title V).

- FMLA, 29 U.S.C. § 2601, alleging discrimination on the basis of Arredondo's disability against UTMB and the individual Defendants in their official capacities.

Arredondo seeks damages and injunctive/declaratory relief from UTMB and injunctive/declaratory relief from the individual Defendants pursuant to *Ex parte Young*. 209 U.S. 123 (1908). Having narrowed the scope of Arredondo's Complaint, the Court addresses each remaining claim.

**B. Motion to Dismiss**

*i. Title VII claims*

Arredondo alleges that UTMB and its employees discriminated against him based on his sex and race. Arredondo further alleges that they retaliated against him for bringing such discrimination to light. Under Title VII, "[i]t shall be an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e(a)(1).

UTMB does not dispute that Arredondo properly alleged a Title VII claim against UTMB. However, it argues that "Title VII provides no basis for individual liability for supervisory employees or fellow employees." Dkt. 13, p. 5. UTMB further argues that this prohibition on individual liability applies to employees in both their individual and official capacities. Arredondo counters that suing individual employers in their official capacity is another way to bring claims against the employer. Arredondo further argues that the cases cited by UTMB in support of its position involved corporations—not government entities—and therefore are inapplicable here.

The Fifth Circuit has addressed the propriety of asserting a Title VII claim against both an employer and its employees in their official capacities. In *Indest v. Freeman Decorating*, it held that "a party may not maintain a suit against both an employer and its agent[s in their official capacities] under Title VII. 164 F.3d 258, 262 (5th Cir. 1999). The Fifth Circuit reasoned that allowing a party to do so would be to hold the employer twice liable for the same act. *See Shabazz v. Texas Youth Comm'n*, 300 F. Supp. 2d 467, 471 (N.D. Tex. 2003) (citing *Indest*, 164 F.3d at 262).

Arredondo argues that cases like *Indest* are inapplicable because they address Title VII claims against private employers. *See, e.g., Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376 (5th Cir. 2003); *Smith v. Amedisys Inc.*, 298 F.3d 434 (5th Cir. 2002); *Indest*, 164 F.3d at 260. However, district courts within the Fifth Circuit have applied the logic of *Indest* in barring Title VII suits against both governmental entities and their employees. *See Shabazz*, 300 F. Supp. 2d at 471. Arredondo here offers no rationale in opposition of doing so here. The Court finds that Arredondo may not bring Title VII claims against both UTMB and its employees. The Title VII claims against Hlavinka, Dansbe, Khawaja, and Callender are therefore **DISMISSED**.

*ii. ADA claims*

Arredondo alleges that UTMB and its employees discriminated against him based on his disability. Arredondo further alleges that they retaliated against him for bringing such discrimination to light. Because Arredondo alleges violations of the ADA in general, it is unclear which ADA Title(s) form(s) the basis of his Complaint. In context, however, the Court construes Arredondo's claims as brought pursuant to Titles I

(employment discrimination) and V (retaliation).  Dkt. 10, ¶ 168 ("Defendants were an employer and Plaintiff was an employee, person, and member of a protected class as defined by 42 U.S.C. § 12101 et seq."); *see also Dottin v. Texas Dep't of Criminal Justice*, 627 F. App'x 397, 398 (5th Cir. 2015) ("Title II does not cover employment discrimination.") (citing *Taylor v. City of Shreveport*, 798 F.3d 276, 282-83 (5th Cir. 2015)) (unpublished).

Under Title I of the ADA, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12101.  UTMB argues that this claim is barred by the Eleventh Amendment.  Arredondo counters that UTMB waived immunity when it accepted federal funds.  Dkt. d10, ¶ 178 ("Because Defendant received financial assistance within the meaning of 29 U.S.C. § 794 [and 42 U.S.C. § 2000d-7], they have waived any Eleventh Amendment Immunity for claims under 42 U.S.C. §12101 et seq.").  *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …."); 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of … [any] Federal statute prohibiting discrimination by recipients of Federal financial assistance.").

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Lumpkins v. Office of Cmty. Dev.*, 621 F. App'x 264, 268 (5th Cir. 2015) (unpublished).[4] The Eleventh Amendment would therefore bar Arredondo's ADA claims unless Texas has consented to suit or Congress has abrogated sovereign immunity. The United States Supreme Court expressly confirmed that Congress did not abrogate the states' Eleventh Amendment sovereign immunity from ADA Title I claims for money damages. *Bd. of Tr. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360 (2001). The Court must therefore determine whether the State has consented to a suit against it.

Arredondo argues that the State consented by accepting federal funds. *See, e.g.*, Dkt. 10, ¶ 208-09 ("Defendants receive Federal financial assistance in the form of grants for research, funds for tuition for Defendants' students pursuant to Federal student aid programs, and financial assistance. Upon information and belief, the financial assistance in the previous paragraph is conditioned, pursuant to agreements with the appropriate federal agencies, on Defendants' waiver of Eleventh Amendment Immunity …."). UTMB does not dispute that it received federal funds. Instead, it argues that it did not consent to waive its Eleventh Amendment sovereign immunity by receiving such funds.

In support, UTMB points to *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 F. App'x 391, 394-95 (5th Cir. 2007). In *Sullivan*, the Fifth Circuit held that Texas did not waive its Eleventh Amendment sovereign immunity from ADEA

---

[4] This protection extends to alter egos and 'arms of the state.' *Id*. Here, the parties agree that UTMB is a state entity. *See* Dkt. 10, ¶ 22.

claims by accepting federal funding. *Id*. The court in *Sullivan* reasoned that the ADEA was not a "Federal statute prohibiting discrimination by recipients of Federal financial assistance." *Id*.; *see* 42 U.S.C. § 2000d et seq. Indeed, the ADEA prohibits discrimination by "employers." The court reasoned that prohibiting employers from discriminating did not constitute prohibiting federal funding recipients from discriminating even though the two groups may overlap. *Id*.

Here, Title I of the ADA prohibits "covered entities" from discriminating on the basis of disability. 42 U.S.C. § 12112(a). Title I defines a "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. 12111(2). Title I further defines "employer" generally as "a person engaged in an industry affecting commerce who has 15 or more employees …." 42 U.S.C. 12111(5)(A). As in *Sullivan*, "[t]he fact that many employers receive federal assistance does not mean that Title I of the [ADA] is a 'statue prohibiting discrimination by recipients of Federal financial assistance.'" *Sullivan*, 217 F. App'x at 395. Texas did not waive its Eleventh Amendment immunity for ADA Title I claims. Because Texas has not consented to suit, and because Congress has not abrogated its immunity from Title I claims, Arredondo's ADA Title I claim against UTMB is **DISMISSED**.[5] However, his

---

[5] This dismissal applies equally to Arredondo's ADA Title V (retaliation) claim. See *Dottin v. Texas Dept. of Criminal Justice*, 627 F. App'x 397, 398 (5th Cir. 2015) ("Title V does not abrogate a state's sovereign immunity. Instead, a plaintiff may bring a retaliation claim against a state entity only to the extent that the underlying claim of discrimination effectively abrogates sovereign immunity of the particular state.") (citing *Lors v. Dean*, 746 F.3d 857, 863-64 (8th Cir. 2014)) (unpublished).

ADA claim for injunctive/declaratory relief against the individual Defendants in their official capacities remains pursuant to *Ex parte Young*.

### *iii. FMLA claims*

Arredondo alleges that UTMB and its employees discriminated against him based on his decision to take leave for his serious health condition as allowed by the Family and Medical Leave Act. Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for … a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2601(a)(1)(D). UTMB again argues that Congress did not abrogate the State's immunity as to the FMLA's self-care provision. Arredondo's Response does not address the assertion of immunity regarding FMLA. Instead, he concedes that he "removed … the majority of his FMLA claims [i.e., all non-*Ex parte Young* claims for injunctive relief] so it is unnecessary for the Court to resolve Defendants' motion on [that] point." Dkt. 21, pp. 1-2. Arredondo's FMLA claims are therefore **DISMISSED** as to UTMB. However, his FMLA claims for injunctive/declaratory relief against the individual Defendants in their official capacities remain pursuant to *Ex parte Young*.

## B. Defendants' Alternative Motion for More Definite Statement

The Court finds that the present Order sufficiently distills Arredondo's claims. As such, a more definite statement is not presently warranted. UTMB's motion for a more definite statement under Rule 12(e) is therefore **DENIED**.

## Conclusion

For the reasons discussed, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. For the sake of clarity, the Court recites the remaining claims:

- Title VII claims against UTMB for discrimination and retaliation on the basis of sex and race, seeking damages and injunctive/declaratory relief;

- ADA Title I/V claims against the individual Defendants in their official capacities for discrimination and retaliation on the basis of disability, seeking injunctive/declaratory relief pursuant to *Ex parte Young*;

- FMLA claims against the individual Defendants in their official capacities for discrimination and retaliation on the basis of disability, seeking injunctive/declaratory relief pursuant to *Ex parte Young*.

All other claims are **DISMISSED with prejudice**.

SIGNED at Galveston, Texas, this 2nd day of August, 2017.

*George C. Hanks Jr.*
George C. Hanks Jr.
United States District Judge