United States District Court     Southern District of Texas

United States District Court
Southern District of Texas
**ENTERED**
December 07, 2018
David J. Bradley, Clerk

Robert Arredondo, §
§
       Plaintiff, §
§
versus §       Civil Action G-16-238
§
University of Texas Medical Branch at §
Galveston, et al., §
§
       Defendants. §

## Opinion on Summary Judgment

1. *Background.*

The University of Texas Medical Branch at Galveston contracts with the Texas Department of Criminal Justice to furnish medical care to resident offenders in state prisons.

From April 2007 to October 2013, Texas employed Robert Arredondo as a mental health case manager. He worked at the Beauford H. Jester IV Unit – a psychiatric hospital. His job responsibilities included: (a) meeting with at least 200 patients per month; (b) promptly completing patient charts; and (c) documenting patients' suicidal and homicidal thoughts. Senior psychologist Shana Khawaja and mental health manager Donald Hlavinka supervised Arredondo.

In early April 2013, Texas notified him that his position would change from exempt to non-exempt under the Fair Labor Standards Act. Under this new classification, Arredondo had to clock-in and out for the hours he worked. He also had to ask his supervisors for permission to work overtime. One week later, Arredondo worked overtime without that permission. He did not report those additional hours. For that, Hlavinka orally warned him of the consequences if he did not accurately document his time.

Texas says not only did Arredondo poorly manage his time, he rarely met the monthly 200-patient quota. In May, he met with only twenty-six patients; in June, sixty-eight. Hlavinka talked to him again about his substandard work. They continued to meet to discuss how to improve and increase his work with patients.

Arredondo filed an internal complaint with the Office of Diversity and Inclusion in early June. He says he applied for numerous positions and transfers, and Texas denied them each time. The personnel department investigated his complaint. Deborah Dansbe, senior human resources consultant, reviewed eleven positions for which Arredondo had applied. She met with him directly as well as with the hiring managers.

During her meeting with him, he said he felt the hiring decisions were discriminatory because he did not *understand* why he was not selected. He also said that because he had seventeen years of experience, he should have been selected despite the interview or the qualifications for the position. He did not say that he was discriminated or retaliated against because he was a man or because he was disabled. Dansbe concluded her investigation and determined that the most qualified candidates had been selected for each job. The investigation closed because Dansbe could not substantiate Arredondo's claims.

Arredondo also met with Dansbe and senior mental health manager Tonya Campbell to discuss his answers to interview questions. She said that he did not interview well and advised him how to improve his responses.

On July 22, Arredondo applied to be a mental health clinician. The job listed several requirements – a master's degree in counseling, social work, or related fields; and a licensure or eligible for a licensure as a professional counselor, social worker, or psychological associate. Campbell and three others interviewed eight applicants, including Arredondo. Two days later, Texas told Arredondo that he had not been selected. The university hired Crystal McCown.

A. *Performance Evaluation.*

In late July, Texas gave Arredondo its evaluation of his 2013 performance. Hlavinka summarized the reasons for his below-standard rating: (a) he was

excessively absent; (b) he did not meet the monthly patient quota; and (c) his clinical notes were unsatisfactory. In response, Arredondo filed a grievance claiming that the evaluation was unfair.

B.   *Leave.*

Arredondo asked Texas for permission to leave occasionally because of his chronic insomnia. The university gave him the necessary paperwork for leave. It received a copy from his physician indicating that he needed "one time a week for up to one day per episode." Texas approved it.

Arredondo also asked to modify his schedule because he says he is diabetic. He met with his supervisors and Lela Lockette-Ware, Americans with Disabilities Act coordinator. In the meeting, he asked for recovery time if his blood-sugar increased and to leave the premises during that time. He also expressed his concerns about storing insulin in his car during the day. He concedes that before his 2013 performance evaluation, he neither needed nor asked for an accommodation. Lockette-Ware asked him to submit paperwork from his physician describing his diabetes and detailing the specific accommodations he needed. He did not.

In the meantime, Texas permitted him to use a flexible schedule with his supervisors' approval. He was allowed to leave and return to work without it counting as an unscheduled absence. Arredondo did not submit the doctors' paperwork. Instead, he e-mailed the personnel department withdrawing his request and would "revisit the issue if his health circumstances changed."

C.   *Termination.*

In early October, Khawaja noticed that Arredondo's patient encounters dramatically increased in August and September. She audited his clinical records and found that the patient charts were inaccurate, incomplete, and late. For example, Arredondo reported that he saw 362 patients in August, but his records show that he saw only 205 – he did not document 157 patients, if they were in fact seen. Arredondo says that the increase resulted from "participating" in

clinical groups. Khawaja says those groups were no longer offered. He also did not document patients' suicidal or homicidal thoughts.

Khawaja also says that several patient charts had the exact same wording for multiple patient encounters. In other words, Arredondo had cut and pasted the same note in every patient's chart. Because of his deficient clinical note-taking and poor performance, Texas fired him.

In May 2014, Arredondo filed a charge of discrimination with the Equal Employment Opportunity Commission. He said that he was discriminated and retaliated against because of his race, disability, age, sex, and national origin. The commission issued a right-to-sue letter in June 2016.

Arredondo filed suit against the school and two names the school apparently uses when it furnishes medical care to inmates – UTMB Correctional Managed Care and UTMB Healthcare Systems, Inc. He also names in his complaint five people who work for the school – Donald Hlavinka, Shana Khawaja, Deborah Dansbe, David Callender, and ophthalmologist Owen Murray.

2. *Promotion.*

From January 2011 to June 2013, Arredondo says he applied for several positions. He insists that Texas denied him jobs, promotions, and transfers because he is a Hispanic man. He is precluded from arguing these claims because they are time-barred.[1] Because he filed his first charge on May 15, 2014, all claims before July 19, 2013, are barred. Arredondo may assert only his claims about the mental health clinician position that he applied for on July 22, 2013.

Arredondo claims that he was well-qualified to be a mental health clinician because he has over seventeen years of experience. He also thinks that he was better qualified than McCown. He was not. Arredondo's education does not make him clearly better qualified. He has only a bachelor's degree in criminal justice and a baccalaureate social worker's license.

---

[1] 42 U.S.C. § 2000e-5(e)(1).

When the hiring panel interviewed the applicants for the position, it scored them in three categories: (a) interview; (b) education; and (c) written responses to behavioral questions. Of the eight candidates interviewed, McCown received the highest score; Arredondo earned the fifth highest.

Even if he had met the minimum qualifications, he cannot show that he was clearly better qualified than McCown. She is a licensed master of social work, interviewed well, demonstrated her knowledge of mood disorders, and has superior credentials. He was not licensed nor did he have a master's degree in the required fields of study. Simply put, he was not hired because he was not qualified under the standards everyone else was meeting. No fact shows that Texas did not hire him because he is a Hispanic man. Arredondo would have needed to show that the three rejected candidates who were the committee's second, third, and fourth placed candidates were all less qualified than he was. He did not.

3. *Disability.*

Arredondo argues that Texas discriminated him because he is disabled. He says he has diabetes. To be disabled under the Americans with Disabilities Act, he must show that his diabetes substantially limits his ability to perform at least one major life activity.

He is not legally disabled. Arredondo says that as a diabetic, he suffers from the "typical symptoms" – dizziness and blurred vision from a sudden decrease in blood sugar. He does not specify how they make him disabled or how his life is substantially impaired. In fact, he admitted that he left work only twice because of his condition. He has no evidence that Texas discriminated against him because of his disability – something it had accommodated. Critically, when he first told Texas that ne needed help with his diabetes, the person handling it told him that he could have an accommodation as soon as he got Texas a medical report. He withdrew his request.

4. *Retaliation.*

Arredondo has no retaliation claim. He claims that Texas retaliated against him when it negatively reviewed him and did not promote him because he filed two complaints. He also says Texas retaliated because he asked for an accommodation for his diabetes and he spoke out against Texas's alleged discriminatory practices.

Treating his complaints as protected activities, he has suffered no adverse employment action from them. Texas is permitted to set its own performance standards and expectations for its employees. When an employee does not meet its expectations, the employer is allowed to take additional action, including firing him. At no point did Texas retaliate against him for filing complaints. It simply notified him that his continuous poor performance was fatally below standards.

Arredondo cannot establish retaliation because he has no facts. Arredondo did not have tenure status – and even if he did, he would not be protected under Title VII. He was an objectively weak employee for whom the school had responsibly recorded the details. That he had complained is a necessary condition but not a sufficient one.[2] He has not shown that his complaints resulted in his negative evaluation or termination. His poor work history and lack of responsibility were well-documented *before* he had complained. Finally, four-months had passed between the time he filed his grievance and his termination.

5. *Medical Leave.*

When he asked Texas for an accommodation for his alleged diabetes, it asked him to submit documents from his physician detailing what he needed. Pending the doctor's note, Arredondo was allowed to store insulin in his car and use his flex time. He did not submit the paperwork and withdrew his request.

---

[2]Brennan, Andrew, *Necessary and Sufficient Conditions, in* THE STANFORD ENCYCLOPEDIA OF PHILOSOPHY (Edward N. Zalta ed., Summer 2017).

He says Hlavinka did not tell him about medical leave availability when his absences became excessive. Working there for six years, he has some responsibility for mastering the employee handbook. Assuming Hlavinka did not tell him, he cannot connect her error to a single category of his five complaints.

Arredondo says he used his sick leave because he would have bad nights. An employee seeking unforeseeable leave must supply enough medical information for his employer to appraise the request. Arredondo did not explain what he meant by having bad nights, and he did not supply Texas with information about a serious health condition. The record shows that he did not give adequate notice about his need for leave. Texas did not need to give him time off but, while the paperwork was pending, they offered to give him three days off at a time – 60% of a five-day work week. He admits that he did not take more than three days off at a time. At no point did Texas tell Arredondo he could not take medical leave.

6. *Title VII.*

Arredondo complains that Texas discriminated him in violation of Title VII of the Civil Rights Act because of his race, national origin, age, and sex.[3] Texas has offered the panel's decisions to not choose him for the positions. He has no evidence that race, national origin, age, or sex were motivating factors in the panel's decisions. He is claiming all of them – all with no support.

7. *Claims Against Others.*

Arredondo sues five other Texas workers: Hlavinka, Dansbe, Khawaja, David Callender, and Owen Murray. He has not said what they have done that would support his claims of discrimination and retaliation. His only evidence is that he did not get the job. This is a fact, not evidence. Title VII precludes Arredondo from suing these people – he may only sue the institution.

---

[3] *See* 42 U.S.C. §1983.

He says Hlavinka did not tell him about medical leave availability when his absences became excessive. Working there for six years, he has some responsibility for mastering the employee handbook. Assuming Hlavinka did not tell him, he cannot connect her error to a single category of his five complaints.

Arredondo says he used his sick leave because he would have bad nights. An employee seeking unforeseeable leave must supply enough medical information for his employer to appraise the request. Arredondo did not explain what he meant by having bad nights, and he did not supply Texas with information about a serious health condition. The record shows that he did not give adequate notice about his need for leave. Texas did not need to give him time off but, while the paperwork was pending, they offered to give him three days off at a time – 60% of a five-day work week. He admits that he did not take more than three days off at a time. At no point did Texas tell Arredondo he could not take medical leave.

6. *Title VII.*

Arredondo complains that Texas discriminated him in violation of Title VII of the Civil Rights Act because of his race, national origin, age, and sex.[3] Texas has offered the panel's decisions to not choose him for the positions. He has no evidence that race, national origin, age, or sex were motivating factors in the panel's decisions. He is claiming all of them – all with no support.

7. *Claims Against Others.*

Arredondo sues five other Texas workers: Hlavinka, Dansbe, Khawaja, David Callender, and Owen Murray. He has not said what they have done that would support his claims of discrimination and retaliation. His only evidence is that he did not get the job. This is a fact, not evidence. Title VII precludes Arredondo from suing these people – he may only sue the institution.

---

[3] *See* 42 U.S.C. §1983.

8.  *Legitimate Reasons.*

The university had a legitimate, non-discriminatory and non-retaliatory reason for rejecting Arredondo: he was unqualified, unfit for promotion, and unfit for retention. The facts do not support his claims. Arredondo's feelings are irrelevant, unverifiable, subjective, and impossibly expansive – six or more grounds copied from the statute without a shred of data; he was not the best candidate for the job. He was the fifth best candidate. The panel considered criteria besides experience. Considering all those criteria and adding the points together shows that Arredondo was simply not qualified. His ignorance of its decision or denial is not evidence.

Texas also had a legitimate reason for firing him: his work was unsatisfactory. The record is replete with data supporting its conclusion. He did not meet Texas's expectations throughout his employment. He inaccurately reported his overtime, he did not meet with the required number of patients per month, and he falsified patients' medical charts. Despite all of this, his supervisors gave him several opportunities to improve his work and they worked with him; his work did not improve. His incorrect charts and under performance coupled with his insubordination and inability to adhere to Texas's expectations justified its decision to fire him.

9.  *Conclusion.*

Arredondo cannot show that Texas discriminated him. It did not retaliate against him for filing complaints or seeking leave. Texas offered valid reasons for terminating him and hiring another, more qualified person. It worked with him, and he did not reciprocate.

UTMB Healthcare Systems, Inc., has already been dismissed. Robert Arredondo will take nothing from the University of Texas Medical Branch at Galveston, UTMB Correctional Managed Care, Donald Hlavinka, Deborah Dansbe, Shana Khawaja, David Callender, and Owen Murray.

Signed on December __7__, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge